UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> RAYMOND DANIELS, <br><br> Defendant. | Case No.  1:21-cv-00643-JLT-BAK (EPG) <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED <br><br> (ECF No. 25). <br><br> <u>FOURTEEN (14) DAY DEADLINE</u> |

Currently before the Court is Plaintiff Wells Fargo Bank, N.A.'s ("Plaintiff") motion for default judgment against Defendant Raymond Daniels ("Defendant") and request for attorneys' fees and costs. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(19). For the following reasons, the Court recommends granting the motion.

**I.     BACKGROUND**

Plaintiff filed this action on April 16, 2021, alleging state law claims for breach of contract, unjust enrichment, express contractual indemnity, and money had and received arising from Defendant's breach of the terms of an account agreement between Plaintiff and Defendant. (ECF No. 1).

According to the complaint, Defendant and his now-estranged wife executed a business account application with Plaintiff on June 22, 2017. (ECF No. 1 at 3). Defendant executed a

separate consumer account application with Plaintiff on February 11, 2020. (*Id.*) The executed account applications both state that the signatory and Plaintiff are bound by the terms of Plaintiff's standard account agreement. (*Id.* at 13, 17). Plaintiff alleges that Defendant used his estranged wife's credentials to make a fraudulent and unauthorized transfer of $100,000.00 from her separate consumer account to the shared business account on June 22, 2020. (*Id.* at 4). Defendant then transferred $99,000.00 from the shared business account to Defendant's consumer account. (*Id.*) According to Plaintiff, the unauthorized transfers violated the account agreement. (*Id.* at 5). As a result of the first unauthorized transfer, Plaintiff credited $100,000.00 to Defendant's estranged wife's consumer account. (*Id.*) Meanwhile, Defendant made use of the funds transferred from the shared business account until his consumer account was overdrawn on June 29, 2020. (*Id.*) Hence, the fraudulent transfers and Defendant's subsequent failure to indemnify Plaintiff as required by the parties' contract provide the factual basis for the claims brought against Defendant. (*Id.* at 5-7).

The Court granted Plaintiff's *ex parte* application to serve Defendant by publication pursuant to California Code of Civil Procedure § 415.50. (ECF Nos. 9). On October 19, 2021, Plaintiff filed proof of service by publication of the summons and complaint. (ECF No. 11). According to the proof of service, the summons and complaint were published in the Los Angeles Daily Journal on the following dates: September 24, 2021; October 1, 2021; October 8, 2021; and October 15, 2021. (*Id.*).

On December 16, 2021, after the Court directed Plaintiff to seek the Defendant's default, Plaintiff filed a request for entry of default against Defendant, and the Clerk of Court entered Defendant's default the same day. (ECF Nos. 14-17). On March 14, 2022, the Court issued an order directing Plaintiff to show cause as to why the case should not be dismissed without prejudice for failure to prosecute. (ECF No. 21). On April 13, 2022, Plaintiff filed a response and requested the Court to extend the deadline for Plaintiff to file a motion for default judgment. (ECF No. 22). On April 14, 2022, the Court issued an order discharging the order to show cause and setting a thirty-day deadline for Plaintiff to file a motion for default judgment. (ECF No. 24).

Plaintiff filed the instant motion for default judgment on April 22, 2022. (ECF No. 25). Plaintiff argues default judgment should be granted against Defendant because the complaint

adequately alleges that Plaintiff is entitled to relief under California law. (ECF No. 25 at 7-8). Specifically, Plaintiff's motion argues the complaint sufficiently alleges meritorious claims against Defendant for breach of contract, express contractual indemnity, and money had and received.[1] (*Id.*). Plaintiff is entitled to $100,000 in compensatory damages excluding interest, attorneys' fees, and costs. (*Id.* at 8, 13). Pursuant to the account agreement between Plaintiff and Defendant, Plaintiff is entitled to recover attorneys' fees, and expenses "incurred in collecting any overdraft in [Defendant's Accounts]." (*Id.* at 9, 13). Additionally, because the damages amount is liquidated, "[Plaintiff] is entitled to prejudgment interest from the date of the breach." (*Id.* at 9, 13). In total, Plaintiff's motion requests that the Court enter judgment against Defendant for $121,792.85. (*Id.* at 13).

The Court granted Plaintiff leave to file supplemental briefing to address the adequacy of service by publication. (ECF No. 27). Plaintiff's supplemental brief outlined Plaintiff's efforts to locate and serve Defendant prior to requesting permission to serve Defendant by publication. (ECF No. 28 at 2-3). Plaintiff first attempted to serve Defendant the summons and complaint at Defendant's last known address but was told that Defendant had moved. (*Id.* at 2). Defendant's estranged wife provided Plaintiff with Defendant's email address. (*Id.*) Plaintiff's counsel sent the summons and complaint along with other filings directed to Defendant to Defendant's email address. (*Id.*) Plaintiff's counsel also attempted to contact Defendant by telephone at three different numbers associated with Defendant. (*Id.* at 2-3). Plaintiff's counsel arranged for a "skip trace" search of Defendant's most recent known addresses, which revealed two potential addresses in Santa Rosa, CA, and Bakersfield, CA. (*Id.* at 3). Plaintiff was unsuccessful in its attempts to serve Defendant at either address. (*Id.*) The search indicated that Defendant had lived in several cities over the last ten years throughout Southern California, Northern California, Central California, Colorado and Arizona. (*Id.* at 4; *see also* ECF No. 9-2 at 10-11). Plaintiff provided a declaration from the individual who performed the search, which stated that numerous public records indices were searched to locate Defendant such as bankruptcy filings, corporation affiliations, county tax lien filings, DMV information, federal tax lien filings, national death

---

[1] Plaintiff's complaint states an additional claim for unjust enrichment. (ECF No. 1 at 5). However, Plaintiff's motion does not specifically argue that it is entitled to default judgment on the unjust enrichment claim. (*See* ECF No. 25).

3

records, real property ownership, and state tax lien filings. (ECF No. 9-2 at 13). According to Plaintiff, service by publication in the *Los Angeles Daily Journal* was adequate because as it was unknown in which city, country, or state Defendant resided in, publication in the most populated county in the state would be the most likely to give actual notice to Defendant. (*Id.* at 4-5).

On August 19, 2022, the Court held a hearing on Plaintiff's motion for default judgment. (ECF No. 31). Counsel Matthew Follet appeared telephonically at the hearing on behalf of Plaintiff. (*Id.*) Defendant did not appear. (*Id.*) At the hearing, the Court directed Plaintiff to file a supplemental declaration addressing the date issue raised in the hearing, revised calculations of the prejudgment interest and attorneys' fees, and additional documentation in support of the request for attorneys' fees. (ECF No. 32). During the hearing, the Court also requested additional briefing regarding whether Plaintiff was entitled to default judgment on the unjust enrichment claim, but Plaintiff's supplemental briefing did not address this issue.[2]

On September 1, 2022, Plaintiff filed a supplemental declaration in support of its motion. (ECF No. 33). According to Plaintiff counsel's declaration, the July 3, 2021, date in Plaintiff's motion set forth as the date upon which prejudgment interest began to accrue was incorrect. (*Id.* at 2). The correct date that prejudgment interest began to accrue was July 3, 2020. (*Id.* at 3). Plaintiff requests the Court award $21,665.49 in prejudgment interest based on the corrected date. (*Id.*) Further, because Plaintiff has incurred additional attorneys' fees and costs since drafting and filing the motion, Plaintiff requests an updated $20,304.56 in attorneys' fees and $1,781.52 in costs. (*Id.*) In support of its request, Plaintiff provides documentation of the costs incurred and hours billed. (*Id.* at 39, 9-37). In summary, Plaintiff's motion for default judgment and supplemental briefing requests the following judgment award against Defendant:

1. $100,000 in compensatory damages;
2. $21,665.49 in prejudgment interest;
3. $20,304.56 in attorneys' fees; and
4. $1,781.52 in costs.

(*Id.* at 4).

---

[2] Because Plaintiff has not provided argument as to why it is entitled to default judgment on the unjust enrichment claim, the Court will recommend that Plaintiff's claim for unjust enrichment against Defendant be dismissed with prejudice.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55 permits the Court to enter default judgment following a defendant's default. *See* Fed. R. Civ. P. 55(b). Rule 55 specifically provides that:

> (b) Entering a Default Judgment
>   (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>   (2) By the Court. In all other cases, the party must apply to the court for a default judgement. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared personally or by a representative, that person or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>     (A) Conduct an accounting;
>     (B) Determine the amount of damages;
>     (C) Establish the truth of any allegation by evidence; or
>     (D) Investigate any other matter.

Fed. R. Civ. P. 55(b).

Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit has enumerated the following factors (collectively, the *Eitel* factors) that a court may consider in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Therefore, the plaintiff is required to provide proof of all damages sought in the complaint.

In addition, before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process, as well as the Court's jurisdiction over the subject

matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *cf. S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) ("We review de novo whether default judgment is void because of lack of personal jurisdiction due to insufficient service of process.").

### III. DISCUSSION

The Court first addresses its subject matter jurisdiction for entering default judgment as well as adequacy of service of process. The Court will then examine the *Eitel* factors and the terms of the proposed judgment.

**A. Jurisdiction**

Pursuant to 28 U.S.C. § 1332(a)(1), federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." In addition to satisfying the minimum amount in controversy, proper diversity jurisdiction requires that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The party asserting diversity jurisdiction bears the burden of proof. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "However, at the pleading state, allegations of jurisdictional fact need not be proven unless challenged." *NewGen, LLC* v. *Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (affirming diversity jurisdiction based on allegations made in amended complaint for the purposes of default judgment).

Individuals are deemed to be citizens of the state in which they are domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). An individual is domiciled in the location where they have established a "fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Lew*, 797 F.2d at 749-750 (internal citations and quotation marks omitted). Domicile is determined at the time the lawsuit is filed. *Id.* An individual's domicile is not changed until a new one is acquired by "the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Id.*

Further, there are several relevant factors a court may consider when determining an individual's domicile, including:

> [C]urrent residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* For purposes of diversity jurisdiction, a corporation is a citizen of both the state where it is incorporated and the state where its "nerve center" (typically its headquarters) is located. 28 U.S.C. § 1332(a)(1), (c)(1); *Hertz Corp. v. Friend,* 559 U.S. 77, 130 (2010).

The Court finds that Plaintiff adequately alleges diversity jurisdiction. First, the amount in controversy requirement is satisfied as Plaintiff seeks compensatory damages totaling $100.000.00. Second, Plaintiff and Defendant are diverse in citizenship. Plaintiff is a citizen of South Dakota because its "main office, as designated in its articles of association, [is] located in Sioux Falls, South Dakota." (*See* ECF No. 1 at 2). As for Defendant, the Court finds sufficient evidence of Defendant's domicile in California. *See Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, 2018 WL 3222610 at *7 (S.D. Cal. Jun. 19, 2018) (quoting *D.C. ex rel Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1044 (D.C. Cir. 1986) ("The whole record may be searched to determine if diversity existed.")). Plaintiff's complaint alleges that Defendant is a "citizen of the State of California, residing in Kern County, California." (ECF No. 1 at 2). Plaintiff's supplemental briefing provides further documentation of Defendant's last known residential address in Bakersfield, California, where Defendant resided between August 23, 2018, and August 16, 2021. (ECF No. 9-2 at 10). Plaintiff's complaint was filed on April 16, 2021. (ECF No. 1). Thus, the Court finds that the complaint and record establish a prima facie case that Defendant was domiciled in California at the time of filing. *See Smith v. Simmons*, 2008 WL 744709 at *7 (E.D. Cal. Mar. 18, 2008) ("Maintaining a place of residence does not in and of itself establish one's domicile; it provides a 'prima facie' case of domicile . . .") (internal citations omitted). Accordingly, the Court finds that it has subject matter jurisdiction over this suit.

**B. Service of Process**

Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. An individual may be served by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

California law, in turn, permits substituted service by:

> [L]eaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail.

Cal. Civ. Proc. Code § 415.20(a). Further,

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode . . . or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of his or her . . . usual mailing address . . ., at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

*Id.* at § 415.20(b). California law allows for service by publication when:

> [U]pon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that. . .
>
>   (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action.
>
>   . . .
>
> (b) The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party. The order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith

8

> mailed to the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064 of the Government Code unless the court, in its discretion, orders publication for a longer period.

Cal. Civ. Proc. Code § 415.50. California Government Code § 6064 requires publication to occur once a week for four successive weeks. Service by publication is satisfied on the twenty-eighth date after the first date of publication. Cal. Gov't Code § 6064. Plaintiffs must publish the summons at least once per week for four consecutive weeks, with at least five days between each publication date. *Id.*

Here, the Court finds that Plaintiff has complied with Rule 4. After Plaintiff was unable to locate Defendant through reasonable diligence, Plaintiff filed an ex parte application to serve Defendant by publication in the *Los Angeles Daily Journal* pursuant to California Civil Procedure Code § 415.50(a). (ECF No. 9 at 3-7).  The Court granted Plaintiff's request. (ECF No. 10). Plaintiff submitted proof of service by publication on October 19, 2021. (ECF No. 11). As stated in Plaintiff's proof of publication, the summons was published in the *Los Angeles Daily Journal* on the following dates: September 24, 2021; October 1, 2021, October 8, 2021, and October 15, 2021. (*Id.* at 2). Accordingly, Plaintiff has met the service of process requirements by substantial compliance with Rule 4. Thus, all jurisdictional requirements are satisfied.

### C. *Eitel* Factors

#### 1. Prejudice to Plaintiff

The first *Eitel* factor considers "whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002). Plaintiff argues that it will be prejudiced unless judgment is entered because Plaintiff will have no other legal means to recover the $100,000 in damages caused by Defendant. (ECF No. 25 at 13). The primary goal of Plaintiff's lawsuit is to recover the loss of funds that resulted from Defendant's wrongful conduct. (*Id.*)

The Court agrees that Plaintiff will be prejudiced if default judgment is not granted. Plaintiff filed this lawsuit on April 16, 2021. (*See* ECF No. 1.) If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendant will not defend this action. Accordingly, this *Eitel* factor weighs in favor of default judgment.

2. <u>Substantive Merits and Sufficiency of Complaint</u>

"The second and third *Eitel* factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. It is appropriate for the court to analyze these two factors together." *Arroyo v. J.S.T. LLC*, 2019 WL 4877573, at *6 (E.D. Cal. Oct. 3, 2019) (citations omitted). The Court, then, examines the complaint to determine whether it states a claim for the relief sought.

a. *Breach of Contract*

Under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman, et al*, 51 Cal. 4th 811, 821 (Cal. 2011) (internal citation omitted). For a contract to be enforceable, the contract terms must be sufficiently definite as a matter of law for the court "to ascertain the parties' obligations and to determine whether those obligations have been performed." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (Cal. Ct. App. 1991). "Stated otherwise, the contract will be enforced if it is possible to reach a fair and just result even if, in the process, the court is required to fill in some gaps." *(Id.)*

As alleged in the complaint, the parties entered two separate contracts—the business account application for the shared business account, and the consumer account application for Defendant's personal account—which were both governed by Plaintiff's standard account agreement. (ECF No. 1 at 3). Specifically, the account agreement forbade unauthorized transfers and provided that, upon overdraft, the account holder must indemnify Plaintiff. (*Id.* at 5). The complaint also alleges that Plaintiff performed its portion of the contract by performing all the conditions, covenants, promises and agreements as required by the account agreement. (*Id.*) According to the complaint, Defendant breached the account agreement by making several unauthorized transfers and failing to indemnify $100,000 to Plaintiff after Plaintiff credited Defendant's estranged wife's account. (*Id.*) Further, after transferring those funds, Defendant overdrew his consumer account. (*Id.* at 4). As a result, the complaint alleges Plaintiff suffered monetary damage in the amount of $100,000. (*Id.* at 5). These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant on the breach of contract claim.

10

b. *Express Contractual Indemnity*

The obligation of indemnity "may arise by virtue of express contractual language." *C.L. Peck Contractors v. Super. Ct.*, 159 Cal. App. 3d 828, 831 (Cal. Ct. App. 1984). The rules governing express contractual indemnity clauses permit great "freedom of action to the parties in establishment of the indemnity arrangement while at the same time subjecting the resulting contractual language to the establishes rules of construction." *Id.* An express indemnity clause has a "preemptive effect, displacing any implied rights which might otherwise arise within the scope of its operation." *Id.* at 834.

As set forth by the complaint, Defendant knowingly executed a consumer account application on February 11, 2020, thereby entering a contract with Plaintiff, which stated the account would be governed by Plaintiff's standard account agreement. (ECF No. 1 at 3; *see id.* at 19-82). Specifically, the account agreement contained a clause in which Defendant agreed to indemnify Plaintiff from "all claims, demands, losses, liabilities, judgments, and expenses (including attorney's fees and expenses" arising from Plaintiff's performance under the account agreement). (*Id.* at 6). Further, the complaint alleges that Defendant's unauthorized account activity resulted in Plaintiff crediting a third-party account holder with $100,000. (*Id.*) The Court finds the language of this clause unambiguous as it clearly defines the Defendant's obligation to indemnify the Plaintiff from harms resulting from Plaintiff's performance under the contract. Because the complaint clearly explains how Plaintiff was harmed while performing under the deposit account agreement, the Court finds that Plaintiff has sufficiently stated a claim for express contractual indemnity.

c. *Money had and received*

A claim for money had and received makes a defendant indebted to a plaintiff "for money had and received by the defendant for the use of the plaintiff." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (Cal. Ct. App. 1997). The elements are as follows: (1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff. *Fireman's Fund Ins. Co. v. Commerce & Indus. Co.*, 2000 WL 1721080, at *8 (N.D. Cal. Nov. 7, 2000). The limitations period for a claim of money had and received is two

years. *Murphy v. Am. Gen. Life Ins. Co.*, 74 F.Supp.3d 1267, 1280 (C.D. Cal. 2015) (citing Cal. Civ. Proc. Code § 339(1) (two-year period for liabilities not founded on written instruments)).

According to the complaint, Defendant received money when Plaintiff executed the transfer from the Defendant's estranged wife's consumer account to the shared business account based on Defendant's improper direction. (ECF No. 1 at 7). Further, Plaintiff then credited the shared business account with Plaintiff's own funds. (*Id.*, *see also* ECF No. 25 at 8). Thus, Defendant's unauthorized transfer was paid by Plaintiff, and was for Plaintiff's own use. Finally, the complaint alleges that as a result of Defendant's fraudulent conduct, Defendant is now indebted to Plaintiff in the amount of $100,000, as well as any interests and costs. (ECF No. 1 at 7). These allegations are legally sufficient to entitle Plaintiff to judgment against Defendant on the money had and received claim.

        3.   <u>Sum of Money in Relation to Seriousness of Conduct</u>

Next, the Court considers the sum of money at stake in the action, with a lower sum supporting default judgment. *See G & G Closed Circuit Events*, *LLC v. Nguyen*, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); *PepsiCo Inc.*, 238 F.Supp.2d at 1176 ("Under the [fourth] *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").

Here, Plaintiff requests the amount of money Plaintiff would have received in indemnification had Defendant fully performed under the contract, $100,000.00, plus interest in the amount of $21,665.49. (ECF No. 33 at 4). These requests are supported and corroborated by Plaintiff's evidence as discussed in detail below. Plaintiff also requests $20,304.56 in attorneys' fees, and $1,781.52 in costs. In total, Plaintiff seeks $143,751.57.

        4.   <u>Possibility of Dispute</u>

No genuine issue of material fact is likely to exist. Plaintiff has adequately alleged claims for breach of contract, express contractual indemnity, and money had and received under California law. Defendant has not made an appearance or otherwise contradicted the well-pleaded allegations of the operative complaint. Accordingly, the Court finds that this factor favors entry of default judgment.

5. Whether the Default was Due to Excusable Neglect

The Court finds that the default in this matter was not due to excusable neglect. Defendant was adequately served with notice of the complaint and failed to respond. Defendant failed to file an answer or otherwise meaningfully participate in this case. Accordingly, the Court finds that this *Eitel* factor weighs in favor of granting default judgment against Defendant.

6. Policy Favoring Decision on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the defendant's failure to appear has made a decision on the merits impossible at this juncture. *Arroyo,* 2019 WL 4877573, at *11.

Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the Court finds the policy favoring decisions on the merits does not preclude entering default judgment against Defendant under these circumstances.

In light of the above findings regarding the *Eitel* factors, the Court recommends granting default judgment in favor of Plaintiff and against Defendant.

**D. Terms of Judgment**

Under Rule 8(a)(3), plaintiff's demand for relief must be specific, and it "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh,* 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005). Rule 54(c) "allows only the amount prayed for in the complaint to be awarded to the plaintiff in a default." *Elektra Entertainment Group v. Bryant*, 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004); *PepsiCo,* 238 F.Supp.2d at 1174 (stating that a default judgment "shall not be different in kind from or exceed in amount that prayed for in the [complaint]").

//

1. Compensatory Damages

In its motion for default judgment, Plaintiff seeks $100,000.00 in compensatory damages. (ECF No. 25 at 10). As set forth in the declaration from Plaintiff's fraud and claims consultant, Defendant made an unauthorized transfer of $100,000.00 from his estranged wife's separate consumer account to the shared business account on June 21, 2020. (ECF No. 25-3 at 3). Defendant then transferred $99,000.00 from the shared business account to Defendant's consumer account and dissipated those funds. (*Id.*) As a result of the June 21, 2020, unauthorized transfer by Defendant, Plaintiff conducted an investigation and, upon determining that Defendant's transfers were fraudulent, credited the wronged account holder $100,000.00 on July 3, 2020.[3] (*Id.*) Pursuant to the account agreement, Plaintiff demanded that Defendant repay the $100,000.00. (*Id.* at 4).

The Court finds that Plaintiff has provided sufficient proof of the damages amount through the declaration from Plaintiff's fraud and claims consultant and supporting documentation, and thus, Plaintiff is entitled to the full amount of compensatory damages. *See Nike, Inc. v. B&B Clothing Co.*, 2007 WL 1515307, at *1 (E.D. Cal. May 22, 2007) (internal citations omitted) ("Where damages are liquidated or otherwise capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.").

2. Prejudgment Interest

Plaintiff also seeks prejudgment interest pursuant to California Civil Procedure Code § 3287. (ECF No. 25 at 10). As the statutory interest rate is ten percent (10%), Plaintiff argues that it is entitled to $21,665.49 [4] in prejudgment interest. (*Id.*)

Prejudgment interest "serves to compensate [the prevailing wronged party] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (internal quotation omitted). State law generally governs the award of prejudgment interest in diversity actions. *Oak Harbor Freight*

---

[3] The declaration at times references June 2021 dates. The Court relies on the corrected dates as set forth in Plaintiff's supplemental brief. (ECF No. 33 at 2).
[4] This amount reflects the prejudgment interest total as updated in Plaintiff's supplemental brief. (ECF No. 33 at 4).

14

*Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). California Civil Procedure Code § 3287(a) provides that a party "entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled to also recover interest thereon from that day." Further, the obligation set forth by a contract "shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Proc. Code § 3289(b).

Because Plaintiff alleged that it was entitled to prejudgment interest under California law in the complaint and because the Court finds that Plaintiff provided adequate proof of the damages amount, the Court also finds that Plaintiff is entitled to recover the full amount of prejudgment interest.

   3. <u>Attorneys' Fees and Costs</u>

Plaintiff also seeks attorneys' fees and costs pursuant to California Civil Procedure Code §§ 1021 & 1717. (ECF No. 25 at 11-13). Plaintiff's motion and supporting declaration state that the account agreement between Plaintiff and Defendant provided that Defendant would "reimburse [Plaintiff] for the costs and expenses (including attorney's fees and expenses)" incurred in collecting any overdraft in Defendant's accounts. (*Id.* at 12). Further, as set forth in Plaintiff's complaint, the express indemnity clause in the account agreement between Plaintiff and Defendant provided that Defendant would "indemnify and hold [Plaintiff] harmless from all claims, demands, losses, liabilities, judgments, and expenses (including attorney's fees and expenses) arising out of or in any connected with [Plaintiff's] performance under the Agreement." (ECF No. 1 at 6).

Plaintiff seeks a total of $20,304.56 in attorneys' fees, and $1,781.52 in costs. (ECF No. 33 at 4). In support of its request for attorneys' fees, Plaintiff provides billing statements as documentation of the work performed by Plaintiff's counsel in this action. (*Id.* at 6-37). Plaintiff states that approximately $1,594.60 of the requested attorneys' fees is yet to be billed. (*Id.* at 3). As for the $1,781.52 in costs sought, Plaintiff provides an itemized disbursement summary of costs. (*Id.* at 39).

   a. *Relevant Legal Standards to be used when calculating attorneys' fee award*

"A federal court sitting in diversity applies the law of the forum state regarding an award

of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 977, 883 (9th Cir. 2000). California Civil Procedure Code § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." California Civil Procedure Code § 1717(a) provides that,

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract . . .then the party who determined to be the party prevailing on the contract . . .shall be entitled to reasonable attorney's fess in addition to other costs.

Further, the trial court "shall determine who is the party prevailing on the contract," and "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." § 1717(b)(1). The trial court is given "broad authority to determine the amount of a reasonable fee." *PLCM Group v. Drexler,* 22 Cal. 4th 1084, 1095 (Cal. 2000).

      b. *Discussion of attorneys' fees and costs*

First, the Court must determine whether Plaintiff is entitled to attorneys' fees under California law. Both the business account and consumer account were governed by Plaintiff's standard account agreement, which specifically provided for the payment of attorneys' fees and costs by Defendant to Plaintiff in the event of breach or overdraft. (*See* ECF No. 25-6 at 19, 32). Further, because the Court has found that Plaintiff is entitled to judgment against Defendant for its breach of contract claim, the Court also finds that for the purposes of § 1717, Plaintiff is the prevailing party in this action. Thus, Plaintiff may be awarded attorneys' fees pursuant to California Civil Code of Procedure § 1717.

Second, the Court must address whether Plaintiff's fees are reasonable. Here, Plaintiff's counsel, Fox Rothschild LLP contends that four attorneys, Eric Andrew Bevan, Joseph A. Milano, Matthew R. Follett, Christopher J. McNamara, and four Fox Rothschild LLP employees only identified as A.S. Rubin, W. Hendel, N. Yegazarian, and S.B. Burack, performed work on this case, billing approximately 73.9 hours.[5] (*Id.*) The billing entries are itemized for each individual and list the various tasks performed in this case, including reviewing the client's case file, preparing the complaint, investigating Defendant's location, pursuing service by publication,

---

[5] As Plaintiff's supplemental brief states that a portion of the fees requested has not yet billed, this total is the sum of al hours documented by the provided billing entries.

responding to the Court's order to show cause, and preparing the motion for default judgment. (*Id.*) Plaintiff's counsel also states that it has incurred litigation costs in the amount of $1,781.52, for which Plaintiff provides an itemized list of costs such as research, document retrieval, court filings, investigation, and messenger services. (*Id.* at 39). Upon review, the Court finds that the 73.9 hours billed in this case are reasonable in light of the legal services performed. In particular, Plaintiff's counsel expended considerable effort to locate Defendant and in briefing the matter. Thus, the Court will recommend that Plaintiff's request for attorneys' fees and costs be granted.

### IV.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 25) be GRANTED;
2. Default judgment be entered in favor of Plaintiff against Defendant Raymond Daniels, for Plaintiff's claims for breach of contract, express contractual indemnity, and money had and received;
3. Plaintiff's claim for unjust enrichment (ECF No. 1) be dismissed with prejudice;
4. Plaintiff be awarded $100,000.00 in compensatory damages;
5. Plaintiff be awarded $21,665.49 in prejudgment interest;
5. Plaintiff be awarded $22,086.08 in attorneys' fees and costs; and
6. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)). IT IS SO ORDERED.

Dated:   **October 5, 2022**              /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE